UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
BETTE KILPAKIS,

                Plaintiff,

   -against-                                   Memorandum of
                                                         Decision & Order
JPMORGAN CHASE FINANCIAL COMPANY, LLC; AMERICA'S    16-cv-2690 (ADS)(AKT)
SERVICING COMPANY; EQUIFAX, INC.; and DOES 1 through
10, inclusive,

                Defendants.
-------------------------------------------------------------------------x

**APPEARANCES:**

**Amir J. Goldstein, Esq.**
*Attorney for the Plaintiff*
166 Mercer Street, Suite 3A
New York, NY 10012

**Parker, Ibrahim & Berg LLC**
*Attorneys for the Defendant JPMorgan Chase Financial Company, LLC*
270 Davidson Avenue
Somerset, NJ 08873
        By:    Scott W. Parker, Esq., Of Counsel

**Reed Smith LLP**
*Attorneys for the Defendant America's Servicing Company*
599 Lexington Avenue, 28th Floor
New York, NY 10022
        By:    Andrew B. Messite, Esq.
                 Kerren B. Zinner, Esq., Of Counsel

**King & Spalding LLP**
*Attorneys for the Defendant Equifax, Inc.*
1185 Avenue of the Americas
New York, NY 10036
        By:    David A. Joffe, Esq., Of Counsel

**SPATT, District Judge:**

        On May 26, 2016, the Plaintiff Bette Kilpakis commenced this action against the Defendants JPMorgan Chase Financial Company, LLC; America's Servicing Company ("ASC"); and Equifax, Inc., alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and the New York Fair Credit Reporting Act ("NYFCRA"), N.Y. GEN. BUS. L. § 380 *et seq.*

On August 3, 2016, ASC filed a motion, pursuant to FED. R. CIV. P. 12(b)(6), seeking to dismiss the complaint on the ground that it fails to state a plausible claim for relief.

Thereafter, on August 26, 2016, the Plaintiff filed a separate motion, pursuant to FED. R. CIV. P. 15(a), seeking leave to file an amended complaint.

For the reasons that follow, ASC's motion to dismiss is denied and the Plaintiff is granted leave to file an amended complaint.

## I. BACKGROUND

### A. Materials Considered

The following pertinent facts are drawn from the complaint and the Plaintiff's proposed amended complaint (the "PAC").

In its discretion, the Court has also considered the following documentary evidence: (1) a signed "Stipulation and Agreed Order" from a 2010 Suffolk County Supreme Court action styled *HSBC Bank USA, National Association v. Bette Kilpakis, et al.*, Index No. 22080/2010; and (2) correspondence between the Plaintiff and ASC dated December 14, 2015 and January 13, 2016. In the Court's view, consideration of these documents is appropriate given that their authenticity and accuracy is not in dispute, and the Plaintiff concedes that she possessed and relied upon them in framing her pleadings. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

The Court has declined to consider all other extrinsic evidence submitted with the present motions, including the declarations by the parties' counsel. *See Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *McMillan v. N.Y. State Bd. of Elections*, No. 10-cv-2502, 2010 U.S. Dist. LEXIS

2

109894, at *11-*12 (E.D.N.Y. Oct. 15, 2010), *aff'd*, 449 F. App'x 79 (2d Cir. 2011); *see also Clark v. Kitt*, No. 12-cv-8061, 2014 U.S. Dist. LEXIS 113494, at *20-*21 (S.D.N.Y. Aug. 15, 2014) (noting that "declarations of counsel are generally properly used only to describe the documents attached to them as exhibits for the Court's consideration, not to advance factual averments or legal arguments" (internal record citation omitted)), *aff'd*, 2015 U.S. App. LEXIS 18895 (2d Cir. Oct. 30, 2015).

B.  The Relevant Facts

At an unspecified time, the Plaintiff, a resident of Old Westbury, fell victim to an identity thief, who caused her to incur personal debts through a series of fraudulent transactions.

Relevant here, one of these allegedly fraudulent transactions involved a mortgage loan (the "Mortgage"), which was issued by non-party HSBC Bank, N.A. ("HSBC") and secured by real property owned by the Plaintiff. The Plaintiff maintains that she had no knowledge or involvement in the procurement of the Mortgage.

In 2010, HSBC initiated the above-mentioned legal action in the Suffolk County Supreme Court, styled *HSBC Bank USA, National Association v. Bette Kilpakis, et al.*, seeking to foreclose on the Mortgage (the "Foreclosure Action").

Although not specifically alleged, it appears that during the pendency of the Foreclosure Action, HSBC assigned its interest in the Mortgage to Wells Fargo Bank, N.A. ("Wells Fargo"). Wells Fargo is the parent company of the Defendant ASC.

Sometime in April 2013, ASC began reporting the Mortgage and Foreclosure Action to various credit reporting agencies. Consequently, both appeared on the Plaintiff's Equifax credit report.

On or about February 18, 2015, the Plaintiff resolved the Foreclosure Action by entering into the above-referenced Stipulation and Agreed Order with HSBC (the "HSBC Stipulation"), which provided, in relevant part:

3

      1. All claims and affirmative defenses of defendant Bette Kilpakis raised against plaintiff's [HSBC] foreclosure claims are withdrawn and discontinued with prejudice and without costs;
      2. Defendant Bette Kilpakis irrevocably consents to of [*sic*] summary judgment of foreclosure and sale of the premises 29 Cather Avenue, Dix Hills, New York 11746, Section 275.00 Block 02.00, Lot 016.000; and
      3. Plaintiff waives any claim to seek or enforce a deficiency judgment against defendant Bette Kilpakis on the note made the basis of this foreclosure.

The apparent effect of the HSBC Stipulation was that the Plaintiff consented to foreclosure of the Mortgage in exchange for being released from and absolved of any continuing personal liability.

However, when, in October 2015, the Plaintiff applied for a home mortgage, her application was denied, allegedly due to ASC continuing to misrepresent the Mortgage and Foreclosure Action in her credit file. In particular, the Plaintiff alleges that her credit report falsely reflected that the Mortgage was in a "collection status" due to unpaid balances and that foreclosure proceedings had commenced.

On November 4, 2015, the Plaintiff disputed the accuracy of these entries with Equifax and requested that they be removed from her credit report.

In addition, on December 14, 2015, the Plaintiff, by attorney Thomas Luz, Esq., composed a letter (the "Dispute Letter") to a representative of ASC identified only as "Amy."

The ostensible purpose of the Dispute Letter was to advise ASC that, by virtue of the HSBC Stipulation, the Plaintiff had "satisfied" the Mortgage in question. Further, since the existence of the Foreclosure Action had worked "an adverse effect on" the Plaintiff's credit rating, the Dispute Letter demanded that ASC promptly advise the major credit reporting agencies of the resolution of the Foreclosure Action, including the fact that HSBC waived continuing liability against the Plaintiff.

Approximately one month later, on January 13, 2016, an Executive Resolution Specialist in ASC's Customer Care and Recovery Group named Nathan Herrera responded to the Dispute Letter. In relevant part, Mr. Herrera acknowledged that ASC had, in fact, identified the Mortgage as a

"foreclosure" in the Plaintiff's credit file. However, because the term "foreclosure" accurately reflected the status of the Mortgage; and because the terms of the HSBC Stipulation did not require otherwise, ASC found no error on its part and declined to make any material adjustments to the Plaintiff's credit file.

Nevertheless, Mr. Herrera stated that, going forward, the Plaintiff's credit file would contain a notation indicating that ASC had completed an FCRA investigation and that the Plaintiff disagreed with its conclusion regarding the accuracy of the information pertaining to the foreclosure.

By March 2016, none of the Defendants had complied with the Plaintiff's requests to her satisfaction. Accordingly, she commenced the present action.

C.  **The Nature of the Claims**

Relevant here, the Plaintiff alleged the following causes of action against ASC: (1) a violation of the FCRA, 15 U.S.C. § 1681s-2(b), based on (a) its inaccurate reporting of the Mortgage and Foreclosure Action, (b) its failure to reasonably investigate the true and accurate status of these items, and (c) its failure to permanently and lawfully correct its internal records; (2) a violation of the NYFCRA, N.Y. GEN. BUS. L. § 349, on the ground that the conduct of ASC in failing to maintain reasonable procedures designed to assure maximum possible accuracy in the preparation of the Plaintiff's credit information constituted deceptive business practices; and (3) a violation of the FDCPA, 15 U.S.C. §§ 1692e(2), (8), (10) and 1692f, on the ground that ASC (a) made false representations as to the character, amount, and legal status of the Mortgage, (b) reported known false or misleading information concerning the Mortgage to a credit reporting agency, and (c) used false representations and/or deceptive means to collect an alleged debt.

It is alleged that these violations resulted in harm to the Plaintiff, namely, the loss of credit and corresponding benefits, as well as the mental and emotional pain, anguish, humiliation, and embarrassment of a credit denial.

It is also noted that the PAC includes claims against the other co-Defendants, which are not at issue in the present motion.

## II.    Discussion

A.    The Standards of Review

"Rule 15(a) gives the Court extensive discretion to decide whether to grant leave to amend after the time for amendment as of course has passed." *Gentleman v. State Univ. of New York*, No 16-cv-2012, 2016 U.S. Dist. LEXIS 161798, at *9 (E.D.N.Y. Nov. 21, 2016) (Spatt, J.) (citation omitted). "In general, such requests should be freely granted unless the proposed amendment would be futile." *Id.* (citing *Grullon v. City of New Haven*, 720 F.3d 133, 139-40 (2d Cir. 2013)).

It is well-settled that where, as here, the Plaintiff seeks to amend her complaint while a motion to dismiss is pending, the Court has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint. *See Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 338 (E.D.N.Y. 2014) (Spatt, J.).

Under similar circumstances, the Court has previously reasoned that, if the proposed amended complaint does not seek to add new claims or parties, and the Defendants have had a sufficient opportunity to respond to the new pleading, then, for the purposes of procedural efficiency, the merits of the pending motion to dismiss ought to be considered in light of the proposed amended complaint. *See Gentleman*, 2016 U.S. Dist. LEXIS 161798, at *9-*10; *Conforti v. Sunbelt Rentals, Inc.*, No. 15-cv-5045, 2016 U.S. Dist. LEXIS 107646, at *20 (E.D.N.Y. Aug. 15, 2016) (Spatt, J.); *Wilson v. Southampton Hosp.*, No. 14-cv-5884, 2015 U.S. Dist. LEXIS 116179, at *15-*16 (E.D.N.Y. Aug. 28, 2015) (Spatt, J.); *Schwartzco Enters. LLC*, 60 F. Supp. 3d at 338.

Applying these principles to the present case, and in its discretion, the Court will construe the pending motion to dismiss as if it were directed at the PAC, so that if the PAC cannot survive Rule 12(b) scrutiny, the Plaintiff's motion to amend will be denied as futile.

Under FED. R. CIV. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)." *Otis-Wisher v. Medtronic, Inc.*, 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

B. **Preliminary Matter – The Withdrawal of the Claim Based on a Violation of the New York Fair Credit Reporting Act**

Although the PAC does not seek to add any new claims, it does seek to withdraw the fourth cause of action, which, as against ASC, alleged a violation of the NYFCRA, N.Y. GEN. BUS. L. § 349. Thus, as an initial matter, to the extent the Plaintiff seeks to withdraw her claim based on the NYFRCA, the Court grants that motion.

C. **As to the Claim Based on Violations of the Fair Credit Reporting Act**

In support of her FCRA claim against ASC, the Plaintiff relies upon subsection (b) of 15 U.S.C. § 1681s-2, entitled "Duties of furnishers of information upon notice of dispute," which provides, in relevant part, as follows:

> (1) In general.  After receiving notice pursuant to section 611(a)(2) [15 U.S.C. § 1681i(a)(2)] of a dispute with regard to the  completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
>   (A) conduct an investigation with respect to the disputed information;
>   (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 U.S.C. § 1681i(a)(2)];
>   (C) report the results of the investigation to the consumer reporting agency;
>   (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished

>   the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–
>    (i) modify that item of information;
>    (ii) delete that item of information; or
>    (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

The crux of the parties' dispute involves the meaning of the term "accuracy," as it is used in the statute. For example, the Plaintiff contends that it was inaccurate for ASC to report on her credit report that the Mortgage was in a "collection status" and that foreclosure proceedings had been commenced because, in reality, the Foreclosure Action had been resolved in such a way as to absolve her of any personal liability. Thus, it is the Plaintiff's position that, upon receiving notice of her dispute, ASC had an affirmative obligation to clarify the situation by providing relevant contextual information to the major credit reporting agencies. At a minimum, the Plaintiff contends that ASC had a duty to cease reporting the Mortgage and/or Foreclosure Action in a way that would appear to indicate financial delinquency on her part.

By contrast, consistent with the theme of Mr. Herrera's response to the Dispute Letter, ASC takes a more literal approach to the definition of "accuracy" under the FCRA. In particular, ASC notes that, by the plain language of the HSBC Stipulation, the Plaintiff "irrevocably consent[ed] to . . . summary judgment of foreclosure and sale." Thus, according to ASC, identifying this result as a "foreclosure" is truthful, and, barring any express provision in the HSBC Stipulation regarding the manner in which this result would be reported in the Plaintiff's credit file, ASC was under no obligation to clarify anything. The Court disagrees.

Contrary to ASC's contention, there is no clear basis for finding that technical accuracy in credit reporting, regardless of potentially important contextual information, satisfies the FCRA's requirements. Under similar circumstances, one district court explained:

8

> Although the question of whether the FCRA requires reporting of contextual information explaining why the individual failed to make payments is unresolved in the Second Circuit, "[s]everal courts . . . have held that a report is accurate for the purposes of the FCRA so long as it is technically accurate, or accurate on its face." *Elsady v. Rapid Global Bus. Solutions, Inc.*, No. 09-11659, 2010 U.S. Dist. LEXIS 69052, 2010 WL 2740154, at *6 (E.D. Mich. July 12, 2010) (collecting cases); *see Kellers v. Ocwen Loan Servicing, LLC*, No. 09-6076, 2009 U.S. Dist. LEXIS 81825, 2009 WL 2899813, at *2 (D. Or. Sept. 9, 2009) ("The FCRA imposes a duty to provide accurate information, but it does not impose a duty to report the reasons a borrower stopped paying a loan.").
>
> On the other hand, other courts have held that "[a] credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) (citing *Pinner v. Schmidt*, 805 F.2d 1258, 1258 (5th Cir. 1986) (finding violation of FCRA where consumer reporting agency marked credit entry "litigation pending" without specifying that is was plaintiff/obligor who had initiated suit against creditor)); *see Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 2010 WL 5127974, at **10-12 (9th Cir. 2010) (adopting "patently incorrect or materially misleading" standard); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) ("[A] consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression."); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 42, 236 U.S. App. D.C. 136 (D.C. Cir. 1984) (holding that plaintiff may pursue FCRA claim even though report is technically accurate, so long as "it is shown that such reports are not accurate to the maximum possible extent") (internal quotation marks omitted).

*Fitzgerald v. Chase Home Fin., LLC*, No. 10-cv-4148, 2011 U.S. Dist. LEXIS 156395, at *31-*33 (S.D.N.Y. Feb. 28, 2011).

Noting that a rule requiring only technical accuracy in credit reporting would contravene the legislative intent behind the FCRA, the court in *Fitzgerald* "adopted the rule from *Sepulvado* and the approach of the Fourth, Fifth, Ninth, and District of Columbia Circuits," which authorizes recovery by consumers whose credit report, though accurate on its face, may nevertheless be unfairly misleading.

Subsequently, in *Wenning v. On-Site Manager, Inc.*, No. 14-cv-9693, 2016 U.S. Dist. LEXIS 81126, at *27 (S.D.N.Y. June 22, 2016), another district court noted that, as set forth in *Fitzgerald*, "[t]he overwhelming weight of authority" supports a less rigid approach to the accuracy analysis, and that "[o]nly one Circuit ha[d] clearly adopted the competing 'technical accuracy' test" advocated by ASC in this case.  Therefore, it, too, adopted the "materially misleading" standard.  *See id.*

9

Guided by these authorities, and in the absence of any contrary authority identified by ASC, this Court finds that the more flexible approach mandated by the "materially misleading" standard is appropriate, and provides a method of evaluating compliance with the FCRA that is more closely aligned than its rigid counterpart with the statute's purpose of addressing the "serious problem in the credit reporting industry . . . of inaccurate *or misleading* information." *Koropoulos*, 734 F.2d at 40 n.4 (citations omitted) (emphasis in original).

Applying this standard, and accepting the allegations in the PAC as true, the Court finds that ASC consistently reported in the Plaintiff's credit file that legal proceedings had been commenced to foreclose the Mortgage because the Plaintiff's account was past due. However, while apparently technically true, in light of the HSBC Stipulation, this information told only part of the story. In the Court's view, a question of fact appears to exist as to whether, given the facts regarding the allegedly fraudulent origins of the Mortgage, and the lender's eventual waiver of its right to enforce any continuing personal liability against the Plaintiff, the selective information provided by ASC to the credit reporting agencies was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado*, 158 F.3d at 895. In fact, at least according to the PAC, this information could, and did adversely impact the Plaintiff's credit rating and access to a home mortgage. *See Fitzgerald*, 2011 U.S. Dist. LEXIS 156395, at *33-*34. In the Court's view, this is sufficient to pass Rule 12(b)(6) muster.

Accordingly, to the extent that ASC seeks to dismiss the Plaintiff's claim based on a violation of the FCRA, its motion is denied.

**D.     As to the Claim Based on Violations of the Fair Debt Collection Practices Act**

Relying on the same set of operative facts as outlined above, the Plaintiff asserts that the inaccurate credit information reported by ASC constitutes debt collection activity, which, in light of the HSBC Stipulation, was false, deceptive, and misleading.

10

Relevant here, in connection with the collection of a debt, the FDCPA prohibits debt collectors from: (1) falsely representing the character, amount, or legal status of the debt; (2) communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed; and (3) using false representations or deceptive means to collect or attempt to collect the debt. *See* 15 U.S.C. § 1692e(2), (8), (10).

In seeking dismissal, ASC primarily disputes that it is a "debt collector" within the meaning of the FDCPA. In this regard, ASC argues that the Plaintiff failed to allege facts to make it plausible that ASC "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," as required under the statute. *See* ASC Memo of Law at 8 (quoting 15 U.S.C. § 1692a(6)). Rather, ASC maintains that it is merely a loan servicing agent for the creditor, a classification that is generally exempt from liability under the statute.

The Plaintiff counters that, even if ASC is, in fact, a loan servicer, the FDCPA nevertheless provides for direct liability in limited circumstances. In this regard, the Plaintiff identifies two situations in which creditors and their servicing agents may be held responsible under the FDCPA for debt collection activities: (1) where a servicing agent begins servicing a loan *after* the borrower defaults; and (2) where, in the process of collecting its own debt, the creditor uses a name other than its own to create the impression that a third-party is collecting or attempting to collect the debt.

As to the first of these scenarios, the Plaintiff asserts that ASC did not begin servicing the Mortgage until after she defaulted, and therefore, with respect to the Mortgage, ASC is a debt collector under the statute.

In this regard, it is true that "[d]istrict courts in the Second Circuit have interpreted section 1692a(6) to exclude [from the definition of "debt collectors" only] loan servicers who obtain a debt prior to default." *Vallecastro v. Tobin*, No. 13-cv-1441, 2014 U.S. Dist. LEXIS 173604, at *7

11

(D. Conn. Dec. 16, 2014) (collecting cases); *see Alibrandi v. Fin. Outsourcing Servs.*, 333 F.3d 82, 86 (2d Cir. 2003) (noting that the FDCPA excepts from the definition of a "debt collector" someone who attempts to collect " 'a debt *which was not in default* at the time it was obtained by such person' " (quoting 15 U.S.C. § 1692a(6)(F)(iii)) (emphasis in original)); *Zirogiannis v. Seterus, Inc.*, No. 15-cv-5884, 2016 U.S. Dist. LEXIS 180537, at *17 (E.D.N.Y. Nov. 28, 2016) ("A mortgage servicer is a 'debt collector' within the meaning of the FDCPA if the mortgage was in default at the time the servicer began servicing the debt").

However, in this case, contrary to the Plaintiff's contention, the PAC lacks any factual allegations relating to the status of the Mortgage at the time ASC began servicing it. In fact, the Plaintiff acknowledges that she does not know precisely when ASC began servicing the loan, and concedes that the PAC "does not specify . . . the date of default." Pl. Memo of Law at 14. Therefore, the Court is unable to conclude that the PAC contains enough facts to make it plausible that ASC began servicing the Mortgage only *after* the Plaintiff's default. *See Zirogiannis*, 2016 U.S. Dist. 180537, at *19-*20 (finding a complaint insufficient to survive dismissal where the plaintiff failed to plead that the alleged debt collector became a loan servicer after the disputed debt entered default); *Vallecastro*, 2014 U.S. Dist. LEXIS 173604, at *8 (same)

However, a closer question is presented by the second scenario. As the Plaintiff correctly notes, it is well-settled that, "although creditors are generally not considered debt collectors subject to the FDCPA, the statute contains an exception to creditor immunity where the creditor, 'in the process of collecting [its] own debts, uses any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts.' " *Vincent v. Money Store*, 736 F.3d 88, 90 (2d Cir. 2013) (quoting 15 U.S.C. § 1692a(6)).

"A creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, pretends to be someone else or uses a pseudonym or alias."

12

*Maguire v. Citicorp Retail Servs.*, 147 F.3d 232, 235 (2d Cir. 1998) (internal citation and quotation marks omitted). In determining whether the so-called "false name exception" applies, courts must ask not whether a third party is in fact involved in the collection of the debt, but whether "the least sophisticated consumer would have the false impression that a third party was collecting the debt." *Id.* at 236.

In this regard, "[a]lthough a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage, it should use the name under which it usually transacts business, or a commonly-used acronym, or any name that it has used from the inception of the credit relation." *Id.* (internal citations and quotation marks omitted).

In this case, as noted above, the original lender, HSBC, assigned its interest in the Plaintiff's Mortgage to Wells Fargo. Thus, Wells Fargo, by way of assignment, is the Plaintiff's creditor.

It is undisputed that ASC is a wholly-owned division of Wells Fargo. Indeed, prior to the submission of this motion, in accordance with Fed. R. Civ. P. 7.1, ASC filed a corporate disclosure statement indicating that "America's Servicing Company" is merely a trade name under which Wells Fargo does business. Thereafter, all of the motion papers submitted on behalf of ASC in this matter indicated that the real party in interest is Wells Fargo d/b/a ASC.

Based on this arrangement, the Plaintiff alleges that ASC is simply the collection arm of Wells Fargo. More to the point, the Plaintiff alleges that Wells Fargo is a "debt collector" for purposes of the FDCPA because it has carried out debt collection activities using a name other than its own, namely, ASC.

In this regard, the Plaintiff appropriately relies on correspondence from ASC, which states unequivocally that, "as the loan servicer, we are attempting to collect a debt." However, nowhere in its correspondence – or, according to the Plaintiff, anywhere else – did ASC disclose that it is controlled by the creditor. *See, e.g., Pimental v. Wells Fargo Bank, N.A.*, No. 14-494, 2016 U.S. Dist. LEXIS

13

1825, at *4-*5 (D.R.I. Jan. 5, 2016) (affirming recommended denial of motion to dismiss where, "reading the Complaint in the light most favorable to the Plaintiffs . . . Plaintiffs plausibly allege that, based on the letter, a hypothetical unsophisticated consumer would not know that ASC was affiliated with Wells Fargo").

Under these circumstances, the Court finds that the PAC contains enough facts to make it plausible that the least sophisticated consumer might get the false impression that ASC was an unrelated third-party, attempting to collect a debt owed to Wells Fargo. ASC has not set forth any rational basis for concluding that ASC is the name under which Wells Fargo usually transacts business. Nor, apparently, is it a commonly-used acronym or a name that Wells Fargo had openly used from the inception of its credit relationship with the Plaintiff.

Accordingly, taking the allegations in the PAC as true, the Court finds it plausible to conclude that Wells Fargo, by acting through its wholly-owned subsidiary to collect a debt owed to it, acted as a "debt collector" for purposes of the FDCPA. Therefore, to the extent that ASC seeks to dismiss the Plaintiff's claim based on a violation of 15 U.S.C. § 1692a on the ground that it is not a debt collector, its motion is denied.

Alternatively, ASC contends that, even if it is found to be a debt collector under the statute, the Plaintiff failed to plausibly allege any wrongful acts that constitute an FDCPA violation. Again the Court disagrees.

As noted above, the FDCPA prohibits debt collectors from: (1) falsely representing the character, amount, or legal status of the debt; (2) communicating or threatening to communicate to any person credit information which is known or which should be known to be false; and (3) using false representations or deceptive means to collect or attempt to collect the debt. In the Court's view, the PAC pleads facts which, if proven, state violations of these provisions.

Initially, for the same reasons as outlined above, the Court finds that ASC may be found to have falsely represented the character, amount, or legal status of the Mortgage by reporting in the

14

Plaintiff's credit file that proceedings had been commenced to foreclose on the Mortgage because the Plaintiff's account was past due. As discussed above, while apparently technically true, in light of the HSBC Stipulation, a question of fact exists as to whether this information was materially misleading and adversely impacted the Plaintiff's credit rating.

Along these same lines, given the Plaintiff's demonstrated attempt to dispute this debt, and construing the PAC in the light most favorable to the Plaintiff, the Court finds it plausible to conclude that ASC communicated to Equifax credit information about the Plaintiff which it knew or should have known to be false or materially misleading based on the HSBC Stipulation.

Finally, harkening back to Wells Fargo's alleged improper use of a trade name to engage in debt collection and credit reporting activities, the Court finds that the PAC sufficiently states a claim based on ASC's use of false representations or deceptive means to attempt to collect an alleged debt.

Accordingly, to the extent that ASC seeks to dismiss the Plaintiff's claim based on a violation of the FDCPA, its motion is denied.

### III.   CONCLUSION

Based on the foregoing, the Court denies the motion by ASC to dismiss the complaint in its entirety.

The Plaintiff is granted leave to file the proposed amended complaint within five days of this Order. All non-answering parties will then have a period of 20 days to file an appropriate response to the PAC.

It is **SO ORDERED:**

Dated:  Central Islip, New York
        January 10, 2017                  /s/ Arthur D. Spatt
                                          ARTHUR D. SPATT
                                          United States District Judge